IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MISSOURI PARKS ASSOCIATION<br>1234 Hoyt Dr.<br>St. Louis, MO 63137<br><br>a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL ENERGY REGULATORY COMMISSION, and<br>888 First Street, NE<br>Washington, DC 20426<br><br>UNION ELECTRIC COMPANY, d/b/a AMERENUE<br>1901 Chouteau Ave.<br>St. Louis, MO 63101<br><br>a corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF**

**Introduction**

Missouri Parks Association ("MPA") challenges the actions of the Federal Energy Regulatory Commission ("FERC") in issuing a defective Environmental Assessment, together with a Finding of No Significant Impact, in lieu of an Environmental Impact Statement concerning the reconstruction of the "Taum Sauk Project in southeast Missouri." The Taum Sauk Project is a reversible, pumped storage, hydroelectric facility. The facility's principal features include a 54.5 acre upper reservoir, a 55-foot-high, 390-foot-long concrete-gravity dam, a 380 acre lower reservoir, an approximately 2,000-foot-long trail race channel, a sediment trap, a 451-foot-long vertical shaft, a 6,572-foot-long tunnel, a penstock, a 148-foot-long, 70-foot-

wide concrete powerhouse, and transmission facilities, including a 30-mile-long transmission line.

MPA's claims arise under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.

**Jurisdiction and Venue**

1. This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question).

2. Venue is in this Court pursuant to 28 U.S.C. § 1391(e) in that defendant FERC is an agency of the United States with its official office in the District of Columbia. Further, a substantial part of the events or omissions giving rise to MPA's claims occurred in the District of Columbia.

**Parties**

3. Plaintiff Missouri Parks Association (MPA) is a nonprofit corporation existing under the laws of the State of Missouri. MPA is a membership organization, composed of more than 2,400 members. From its founding in 1982, MPA has been actively engaged in efforts to preserve, interpret and enhance the natural and cultural values of Missouri's parks, historic sites, and other outstanding resources, including the state parks and the outstanding natural resources located around the Taum Sauk project. These interests of MPA and its members have been and will continue to be adversely affected by FERC's determination to issue a defective Environmental Assessment ("EA") and a Finding of No Significant Impact ("FONSI") for the reconstruction of the Taum Sauk project.

4. Many of MPA's members use the area to be affected by the reconstruction and operation of the Taum Sauk project for birdwatching, nature study, hiking, and other purposes.

FERC's actions concerning the reconstruction of the Taum Sauk project have caused and will continue to cause injury to MPA's members, in part, by leading to the reduction or elimination of wildlife and wildlife habitat that members will no longer be able to view in the affected area, the reduction of the quality and quantity of the water and degradation of aquatic ecosystems in Missouri Outstanding State Resource Waters in the affected area, and the inability to view Proffit Mountain as a mountain but instead as a flat-topped, concrete reservoir.

5. Defendant FERC is an agency of the United States.

6. Defendant Union Electric is a Missouri corporation in good standing. Union Electric is doing business as AmerenUE. AmerenUE has received authorization from FERC to reconstruct the Taum Sauk project.

*History of the Project*

*1959 – 1965*

7. In or about December, 1959, Union Electric Company began to purchase approximately 3,600 acres of land in southeast Missouri for the purpose of constructing and operating the Taum Sauk hydroelectric facility. In the midst of acquiring the land, Union Electric leveled the top of Proffit Mountain, a mountain within the St. Francois Mountains, blasting and quarrying rock to the floor level of the reservoir and using the rubble and gravel for the project's reservoir walls. These and other actions of Union Electric took place without an evaluation of the project's impacts on the surrounding natural and cultural resources.

8. After completing construction, in or about October 1963, Union Electric dedicated the Taum Sauk facility, all the while engaged in litigation with the Federal Power Commission (FPC) over whether it was required to obtain a federal license for the facility.

9. On May 3, 1965, in *Federal Power Commission v. Union Electric Co.*, 381 U.S. 90 (1965), the Supreme Court held that a federal license was in fact required. On August 26, 1965, the Federal Power Commission issued to Union Electric a 50-year license to operate the facility, retroactive to July 1, 1960, thereby avoiding any meaningful investigation of the project by the Federal Power Commission, as well as avoiding any meaningful public consideration of the impacts of the project on the surrounding resources. The license is effective for a period of 50 years. It expires on June 30, 2010.

*The 2005 Taum Sauk Disaster*

10. On December 14, 2005, the upper reservoir of the Taum Sauk Project breached when the pumps failed to shut off, causing AmerenUE to pump water over the upper reservoir wall. Subsequent erosion and the cutting of the rockfill embankment formed a breach approximately 656 feet wide at the top of the rockfill dam and 496 feet at the base of the dam. The peak discharge from the breach was about 273,000 cubic feet of water per second. The complete evacuation of the reservoir occurred within 25 minutes, draining over a billion gallons of water.

11. The breached water flowed down the west side of Proffit Mountain into the East Fork of the Black River. The flows destroyed the home of the Johnson's Shut-Ins State Park superintendent, flooded motorists on Highway N, and significantly damaged the State Park, its campground, and adjacent properties.

12. On or about April 28, 2006, FERC's staff issued a report on the Taum Sauk failure.

13. Section 3 of the FERC staff report deals with the historical performance of the facility's upper reservoir. Subsection 3.5 discusses historical cracking in the facility's parapet wall. Subsection 3.6 notes that leakage through the reservoir floors, walls and valves seals has been a problem from the first day of the facility's operation.

4

14. Section 5 of the FERC staff report deals with the facility's instrumentation and controls.

15. Subsection 5.5.1 notes problems with system controls in September, 2005, when there was overtopping of the reservoir. The section further notes that Ameren did not report the wave overtopping to FERC, but instead, the overtopping was discovered by FERC's investigation team after the December 14, 2005, failure of the facility.

16. After the disaster FERC fined Union Electric $15 million. Until then, the largest fine ever levied by FERC was $500,000.

17. After the disaster the State of Missouri sued Union Electric for actual and punitive damages, alleging Union Electric recklessly operated the plant and put financial considerations from the sale of power over safety, maintenance and engineering. On November 27, 2007, Union Electric and the State signed a consent judgment to resolve the State's claims.

18. After the disaster the Missouri Public Service Commission investigated the cause of the project's failure. The Commission determined that the overtopping occurred because the plant was customarily operated with an insufficient margin of safety, the water level sensors were unreliable because they had broken free from their anchoring system, and the emergency back-up sensors, intended to prevent the exact chain of events that in fact had occurred, had been improperly set too high. The Commission further determined that the breach was entirely avoidable in that Ameren knew for over two months that the water level sensors were unreliable, but unaccountably failed to make repairs. Finally the Commission found that the failure was a management failure in that Ameren had organized the operation of its plants and the performance of maintenance, repair and improvement activities at its plants in such a way that overall direction was lacking and crucial information was not shared.

*The Environmental Setting*

19. The Taum Sauk project is located in the heavily forested St. François Mountains with state parks, conservation areas, and large portions of the Mark Twain National Forest surrounding the project area. The nearby St. Francois Mountains Natural Area, just north and east of the upper reservoir, at 7,028 acres, is the largest designated natural area in Missouri. It includes nearly all of Taum Sauk Mountain State Park, Proffit Mountain Conservation Area, and 80 acres of Johnson's Shut-Ins State Park. There are three other natural areas and a wild area to the west in Johnson's Shut-Ins State Park. The project is near the historic Boy Scout Trail, the Taum Sauk section of the Ozark Trail, the Bell Mountain Wilderness Area, and Elephant Rocks State Park. Some outstanding natural features of these areas include igneous rock glaciers, igneous glades, extensive gravel washes, fens, and forests of oak, hickory and pine.

20. The area contains the largest contiguous block of State-owned wild lands in Missouri. It includes the greatest concentration of high quality features known on public land in the region, including outstanding igneous glade/savanna complexes, geologic features and Taum Sauk Creek, an Ozark headwater stream recognized as an Outstanding State Resource Water. As part of the Missouri Department of Conservation's Comprehensive Wildlife strategy, the entire project is included in the St. Francois Knobs Conservation Opportunity Area. These conservation opportunity areas contain significant wildlife resources, and have been identified as some of the best places to conserve Missouri's native wildlife and their habitats.

21. The Missouri Department of Conservation's Natural Heritage Program has identified 47 high-quality communities in the Black River upper sub-basin. These include Taum Sauk Creek above the reservoir as a significant example of an Ozark headwater stream, the gravel wash communities along Taum Sauk Creek as notable records of dry-mesic igneous woodland,

6

significant records of dry-mesic igneous forest, notable records of dry-mesic bottomland woodland, and significant records of Ozark fen and forested fen of Proffit Mountain around the reservoir project site or along the drainage on either side.

22. The Missouri Department of Natural Resources has identified certain waters as "Missouri Outstanding State Resource Waters" (OSR), which are "high quality waters with a significant aesthetic, recreational or scientific value. A three-mile reach of the East Fork Black River that flows through Johnson's Shut-Ins State Park is on the State's list of such waters, but was significantly gutted by the reservoir breach. Similarly, a 5.5-mile reach of Taum Sauk Creek in Taum Sauk Mountain State Park, ending at the border of Union Electric's property, is also listed. The East Fork Black River, before the December 2005 project disaster, was known for its extremely clear and clean water, lacking in turbidity and siltation. It supported fisheries and high biodiversity, and attracted many visitors to the nearby parks and the general area each year.

23. The species known as "Mead's Milkweed" is currently listed as threatened under the federal Endangered Species Act. It is listed as endangered by the Missouri Department of Conservation. Populations of Mead's Milkweed are known to occur on Proffit Mountain, including where Union Electric's transmission line intersects a glade complex, and on Wildcat Mountain, Taum Sauk Mountain, Church Mountain, and on the other side of the project site on Bell Mountain. The project site sits around what are probably the largest populations of this species to survive in modern times, and one of very few that still produces viable seeds.

*The 2005 Re-licensing Notice*

24. On or about February 17, 2005, Union Electric notified FERC of its intent to file an application for a new license for the Taum Sauk facility. To be timely filed, Ameren is required to file the application with FERC within the next several months, on or before June 30, 2008.

7

25. In the absence of the December 2005 disaster, FERC would have been obligated during the course of the upcoming license proceeding, without prejudgment, to evaluate the alternatives to, and the impacts of, operating the Taum Sauk facility, giving full consideration to issues including power and development purposes, energy conservation, the ability of Ameren to operate the facility, the protection of fish and wildlife, the mitigation of damage to fish and wildlife, including related spawning grounds and habitat, and other aspects of environmental quality.

26. Between the time of Ameren's notice of intent to apply for a new license, and FERC's upcoming evaluation of alternatives to, and the impacts of, operating the Taum Sauk facility, the Taum Sauk disaster occurred.

*The 2007 Construction Application*

27. On February 5, 2007, Ameren filed design drawings, technical specifications, a calculation brief, and an environmental report in support of an application to rebuild the Taum Sauk facility.

28. After receiving of the application FERC undertook to analyze the environmental impacts arising from the construction of the facility. FERC determined that the temporal scope of the analysis would be from the start of the project's construction through reconstruction of the upper reservoir. The evaluation of impacts would end with the initial refilling of the upper reservoir. FERC declined to examine any impacts that will arise from the operation of the facility, except for the potential impacts of a release from an Overflow Release Structure. According to FERC the project was undergoing re-licensing and, said FERC, it would carefully evaluate the effects of the project's operation there.

29. The reconstruction of the Taum Sauk facility is sufficiently connected to the re-licensing and operation of the facility so that FERC should have evaluated, before authorizing Taum Sauk's reconstruction, all reasonable alternatives to, and all foreseeable impacts from, both the construction and operation of the Taum Sauk facility.

30. By segmenting the reconstruction of the Taum Sauk facility from the re-licensing and operation of the facility, FERC will have allowed Ameren to spend millions upon millions of dollars to rebuild the project, after which time it will be virtually impossible for FERC to objectively evaluate the alternatives to, and the impacts arising from, the facility, and then potentially refuse to reissue to Union Electric an operating license, no matter how compelling the case for that refusal may be.

## Count I

## NEPA Violation

### (Failure to Evaluate Alternatives and Impacts)

31. MPA incorporates by reference paragraphs 1 through 30 above.

32. The reconstruction of the Taum Sauk facility is connected, is interdependent with, and is similar to the re-licensing and operation of the facility within the meaning of NEPA and its implementing regulations.

33. FERC has failed to evaluate the reasonable alternatives to, and the foreseeable impacts of, operating the Taum Sauk facility.

34. FERC's failures, including the failures set out in paragraphs 28-30 and 33 above, violate NEPA and its implementing regulations which require federal agencies to consider together the reasonable alternatives to, and the foreseeable impacts of, connected, interdependent, or similar actions.

35. The Environmental Assessment prepared by FERC is defective for the reasons set forth in paragraphs 28-30, 33 and 34 above.

WHEREFORE, MPA prays that this Court make and enter its order:

1. Declaring that:

    A. In issuing the defective EA and a FONSI, FERC failed to adequately evaluate the reasonable alternatives to the Taum Sauk project and the foreseeable impacts arising from the operation of the Taum Sauk project, in violation of NEPA and its implementing regulations;

    B. FERC's actions are arbitrary, capricious, an abuse of discretion, in excess of statutory jurisdiction, authority, and limitations, without observance of procedure required by law, unsupported by substantial evidence and unwarranted by the facts, in violation of the Administrative Procedure Act.

2. After hearing, preliminarily enjoining, and after full hearing, permanently enjoining the defendants and all others acting in concert with them from carrying on or permitting any activities in furtherance of the construction of the project until such time as FERC prepares an adequate environmental assessment and/or environmental impact statement, the sufficiency of the environmental assessment and/or environmental impact statement to be determined by this Court.

3. Awarding plaintiff such other and further relief as the Court may deem just and proper, including costs, attorneys' fees, expert witness fees and other expenses of litigation.

## Count II

## NEPA Violation

### (Failure to Prepare an Environmental Impact Statement)

36. MPA incorporates by reference the allegations contained in paragraphs 1 through 35 above.

37. NEPA requires that Federal agencies prepare an EIS for major Federal actions significantly affecting the quality of the human environment.

38. FERC's issuance of a FONSI and a defective EA, in lieu of an EIS, violates NEPA because the reconstruction and re-licensing and operation of the Taum Sauk project is a major Federal action with significant environmental impacts. In determining that no EIS was required FERC violated NEPA.

WHEREFORE, MPA prays that this Court make and enter its order:

1. Declaring that:

    A. In failing to prepare an EIS, FERC failed to adequately evaluate the reasonable alternatives to the Taum Sauk project and the foreseeable impacts arising from the operation of the Taum Sauk project, in violation of NEPA and its implementing regulations;

    B. FERC's actions are arbitrary, capricious, an abuse of discretion, in excess of statutory jurisdiction, authority, and limitations, without observance of procedure required by law, unsupported by substantial evidence and unwarranted by the facts, in violation of the Administrative Procedure Act.

2. After hearing, preliminarily enjoining, and after full hearing, permanently enjoining the defendants and all others acting in concert with them from carrying on or permitting any activities in furtherance of the construction of the project until such time as FERC

prepares an adequate environmental impact statement, the sufficiency of the environmental impact statement to be determined by this Court.

3.  Awarding plaintiff such other and further relief as the Court may deem just and proper, including costs, attorneys' fees, expert witness fees and other expenses of litigation.

## Count III

### Violation of the Administrative Procedure Act

39. MPA incorporates by reference the allegations contained in paragraphs 1 through 38 above.

40. FERC's actions described in described in paragraphs 28-30 and 33 above are arbitrary, capricious, an abuse of discretion; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; unsupported by substantial evidence; and unwarranted by the facts. .

WHEREFORE, MPA prays that this Court make and enter its order:

1.  Declaring that:

    A.  In issuing the defective EA and a FONSI instead of an EIS, FERC failed to adequately evaluate the reasonable alternatives to the Taum Sauk project and the foreseeable impacts arising from the operation of the Taum Sauk project, in violation of NEPA and its implementing regulations;

    B.  FERC's actions are arbitrary, capricious, an abuse of discretion, in excess of statutory jurisdiction, authority, and limitations, without observance of procedure required by law, unsupported by substantial evidence and unwarranted by the facts, in violation of the Administrative Procedure Act.

13

2. After hearing, preliminarily enjoining, and after full hearing, permanently enjoining the defendants and all others acting in concert with them from carrying on or permitting any activities in furtherance of the construction of the project until such time as FERC prepares an adequate environmental assessment and/or environmental impact statement, the sufficiency of the environmental assessment and/or environmental impact statement to be determined by this Court.

3. Awarding plaintiff such other and further relief as the Court may deem just and proper, including costs, attorneys' fees, expert witness fees and other expenses of litigation.

*Kathleen G. Henry*
Kathleen G. Henry (No. MO0001)
Great Rivers Environmental Law Center
705 Olive Street, Suite 614
St. Louis, MO 63101-2208
Phone: (314) 231-4181
Fax: (314) 231-4184

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Missouri Parks Association

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **88888**
(EXCEPT IN U.S. PLAINTIFF CASES)
St. Louis County

## DEFENDANTS
Federal Energy Regulatory Commission
Union Electric Company, d/b/a AmerenUE

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Washington
(IN U.S. PLAINTIFF CASES ONLY) DC
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Kathleen G. Henry   314-231-4181
Great Rivers Environmental Law Center
705 Olive St., Ste. 614; St. Louis, MO 631

Case: 1:07-cv-02233
Assigned To : Collyer, Rosemary M.
Assign. Date : 12/11/2007
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ☐ A. Antitrust
- ☐ 410 Antitrust

### ☐ B. Personal Injury/Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ☒ C. Administrative Agency Review
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☒ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

V. ORIGIN
☒ 1) Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U.S.C §§ 4321, et. seq. Challenge to issuance of a defective Environmental Assessment and a Finding of No Significant Impact.

VII. REQUESTED IN COMPLAINT     CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐     DEMAND $ _____     Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

VIII. RELATED CASE(S) IF ANY     (See instruction)     ☐ YES ☒ NO     If yes, please complete related case form.

DATE 12-11-07     SIGNATURE OF ATTORNEY OF RECORD  Kathleen S. Henry

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

   I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

   III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

   IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

   VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

   VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.