IN THE UNTIED SATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MISSOURI PARKS ASSOCIATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:07-cv-02233-RMC |
| FEDERAL ENERGY REGULATORY | ) | |
| COMMISSION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**UNION ELECTRIC COMPANY'S**
**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant Union Electric Company d/b/a AmerenUE ("AmerenUE"), by its counsel, and

pursuant to Federal Rule of Civil Procedure 12(b)(1), hereby respectfully moves to dismiss for

lack of subject matter jurisdiction the action filed by Plaintiff Missouri Parks Association

("MPA").

WHEREFORE, for the reasons fully set forth in the accompanying statement of points

and authorities, AmerenUE respectfully requests that this Court dismiss with prejudice MPA's

Complaint for Declaratory, Injunctive and Other Relief for lack of jurisdiction.

Respectfully submitted,

_____/s/_____

Charles A. Zdebski
Clifford S. Sikora
Jordan J. Abshire
TROUTMAN SANDERS LLP
401 Ninth Street, NW, Suite 1000
Washington, DC 20004-2134
(t) 202.274.2950
(f) 202.654.5632
(e-mail) charles.zdebski@troutmansanders.com

## CERTIFICATE OF SERVICE

I, Charles A. Zdebski, hereby certify that a copy of the foregoing Motion to Dismiss for Lack of Subject Matter Jurisdiction, together with the accompanying Statement of Points and Authorities in Support and proposed Order, was served this 28th day of January 2008, by mailing a true copy thereof to:

Kathleen G. Henry
Great Rivers Environmental Law Center
705 Olive Street, Suite 614
St. Louis, MO 63101-2208

Federal Energy Regulatory Commission
Robert Solomon, Solicitor
888 First Street, NE
Washington, DC 20426

_____/s/_____
Charles A. Zdebski
TROUTMAN SANDERS LLP
401 Ninth Street, NW, Suite 1000
Washington, DC 20004-2134
(t) 202.274.2950
(f) 202.654.5632
(e-mail) charles.zdebski@troutmansanders.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MISSOURI PARKS ASSOCIATION    )
    )
    Plaintiff,    )
    )
    v.    )
    )    Case No. CV 07-2233
FEDERAL ENERGY REGULATORY    )
COMMISSION, et al.    )
    )
    Defendants.    )

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF UNION ELECTRIC COMPANY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant Union Electric Company d/b/a AmerenUE ("AmerenUE"), by its counsel, submits the following Statement of Points and Authorities in support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction the action filed by Plaintiff Missouri Parks Association ("MPA").

## INTRODUCTION AND SUMMARY OF ARGUMENT

MPA's Complaint for Declaratory, Injunctive and Other Relief ("Complaint") challenges the determination of the Federal Energy Regulatory Commission ("FERC") to permit reconstruction of the Taum Sauk pumped storage facilities operated by AmerenUE in southeast Missouri. MPA's Complaint must be dismissed, however, because the claims alleged in the Complaint under the National Environmental Policy Act ("NEPA")[1] and the federal Administrative Procedure Act ("APA")[2] are impermissible collateral attacks on matters decided by FERC in a proceeding that may only be properly appealed to a United States Circuit Court of

---

[1]    42 U.S.C. §§ 4321 et. seq.

[2]    5 U.S.C. §§ 551 et. seq. and §§ 701 et seq.

Appeals. Moreover, neither NEPA nor the APA provides this Court with jurisdiction over the subject matter of the Complaint. Instead, the Federal Power Act ("FPA") grants exclusive jurisdiction to the federal Courts of Appeal to review FERC orders. FPA Section 313[3] provides parties aggrieved by FERC decisions under the Federal Power Act an opportunity to appeal exclusively to "the Circuit Court of Appeals of the United States for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia." The U.S. Supreme Court has held that this jurisdictional mandate is exclusive. *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958) (FPA Section 313 is "the **exclusive** mode for judicial review of the Commission's orders.") (emphasis added).

## APPLICABLE LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has jurisdiction to entertain his claims. Fed. R. Civ. P. 12(b)(1); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C. 2001) (holding that the Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."). Although the Court should construe all well-pled allegations of the complaint in a light favorable to the pleader, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), plaintiff's factual allegations bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim. *Grand Lodge of the Fraternal Order of Police*, 185 F. Supp. at 13-14 , *citing* 5A Wright & Miller, FED. PRAC. & PROC. CIV.2D, § 1350. In deciding a Rule 12(b)(1) motion, the Court is not limited to the allegations of the complaint. *See Hohri v. United States*, 782 F.2d

---

[3]     16 U.S.C. § 825l.

227, 241 (D.C. Cir. 1986) (materials *aliunde* pleadings can be considered on Rule 12(b)(1) motion), *vacated on other grounds*, 482 U.S. 64 (1987).

## BACKGROUND

AmerenUE's Taum Sauk Pumped Storage Project (FERC Project No. 2277) (the "Project") is a pumped-storage hydroelectric facility with an upper reservoir located atop Proffit Mountain in southeast Missouri. The Project has been operated pursuant to a license issued by FERC's predecessor, the Federal Power Commission, effective July 1, 1960. On December 14, 2005, the Project's upper reservoir breached, rendering the facility inoperable.

Commission regulations and the Project license require AmerenUE to maintain the Project in working order throughout the term of the license. Accordingly, AmerenUE fully complied with the FERC regulations in force at the time of the breach in order to repair the Project and return it to working order. FERC staff was involved in the planning, review and approval of each step of the design process for the reconstruction of the Project. In addition, two separate groups of independent safety, geotechnical and engineering experts were involved in the reconstruction design process from the very beginning. FERC retained a three member Independent Panel of Consultants to assist in FERC's review of the forensic analysis and design process. FERC also required AmerenUE to convene a four member independent Board of Consultants, with each Board member approved by FERC to "oversee, review and assess" each step of the design process. After this extensive process involving engineering design and multiple rounds of review by the expert consultants and opportunities for public comment, FERC gave final approval to the plans for reconstruction of the Project and authorized AmerenUE to begin the reconstruction work. *See* August 15, 2007 FERC Order ("August 15 Order") in FERC Docket No. P-2277 ("FERC Proceeding"). A true and correct copy of the August 15 Order in

the FERC Proceeding is appended hereto as Exhibit A.[1] Rebuilding of the upper reservoir in the

Project Reconstruction will take place in essentially the same footprint as the previous upper

reservoir.

Pursuant to NEPA and its own regulations, FERC performed a detailed analysis to

determine the impacts and identify mitigative measures necessary as a result of the proposed

repair and rebuilding of the Project. The end product of that analysis is the Commission's final

Environmental Assessment (EA), issued on August 14, 2007. The final EA culminated FERC's

expansive review of the impacts associated with reconstruction.

FERC's environmental review included substantial opportunities for public involvement.

On February 13, 2007, FERC issued a Notice of Scoping Meetings and Intent to Prepare an

Environmental Document, which was published in the Federal Register on February 26, 2007.

See 72 Fed Reg. 8376. This notice invited comments on a forthcoming scoping document and

scheduled two public meetings on March 12, 2007. The purpose of these meetings was to

receive input on the appropriate scope of the environmental analysis.[2]

On February 21, 2007, FERC's Office of Energy Projects transmitted its scoping

document for the NEPA analysis to the entities and individuals on the Commission's official

mailing list for the Taum Sauk project. The scoping document contained: (1) a description of the

---

[1]    For ease of reference, the reconstruction and repair of the Project facilities as defined in and ordered by the
August 15 Order will hereinafter be referred to as the "Project Reconstruction."
[2]    More specifically, the notice stated that:
    At the scoping meetings, Commission staff will: (1) summarize the environmental issues
    tentatively identified for analysis in the environmental document; (2) solicit from the meeting
    participants all available information, especially quantifiable data, on the resources at issue; (3)
    encourage statements from experts and the public on issues that should be analyzed in the
    Commission's NEPA document, including viewpoints in opposition to, or in support of, staff's
    preliminary views expressed in the SD; (4) determine the resource issues to be addressed in the
    NEPA document; and (5) identify those issues that require a detailed analysis, as well as those
    issues that do not require a detailed analysis. Staff will also be soliciting input on potential
    measures that could be implemented to minimize construction-related impacts. The meetings will
    be recorded by a stenographer and become part of the formal record for this project.
Notice at 2.

scoping process and schedule for the development of the environmental document; (2) a

description of the proposed action and alternatives; (3) a preliminary identification of

environmental issues; (4) a request for comments and information; and (5) a proposed document

outline.  The scoping document indicated that comments on the scoping would be due April 11,

2007, and that FERC intended to issue draft and final NEPA documents on May 11, 2007, and

July 11, 2007, respectively.

FERC received comments on the scoping document from a number of private individuals

and community leaders attending the March 12, 2007 meeting in Lesterville, Missouri.  Although

some of the commenters expressed concerns regarding reconstruction of the Project, many

voiced their support and noted the benefits it brings to the region.[3]  At the March 12, 2007

meeting in Jefferson City, Missouri, FERC addressed the differences between the rebuild

proceedings and future relicensing of the Project, among other issues.  Most notably, FERC

received comments from Susan Flader, past president and executive committee member of

MPA.[4]  Ms. Flader's remarks were followed by remarks from Dan Sherburne of Missouri

Coalition for the Environment,[5] and Becky Denny of the Missouri Sierra Club.[6]

MPA, among others, submitted written comments to FERC in response to the scoping

document on April 16, 2007.  These comments sought compensation for damage to the

environment in the form of a deed to nearby AmerenUE property on Church Mountain, along

with a number of other conditions on reconstruction.  Additionally, MPA argued that an

Environmental Impact Statement ("EIS") should be prepared.

---

[3]      See Transcript of Agency Scoping Meeting (Lesterville, MO), FERC Project No. P-2277 (Mar. 12, 2007).
[4]      See Transcript of Agency Scoping Meeting (Jefferson City, MO), FERC Project No. P-2277, at 22-31
(Mar. 12, 2007).
[5]      Id. at 31.
[6]      Id. at 43.

FERC issued its draft EA on June 7, 2007, and requested comments on the draft EA by July 9, 2007. The draft EA noted that MPA's comments (and the comments submitted by others) on the scoping document were considered in relation to preparation of the draft EA.[7] The Missouri Coalition for the Environment and American Rivers submitted comments on the draft EA (together with the Missouri Sierra Club, these three entities are collectively referred to herein as the "Coalition"), but MPA did not. As noted above, FERC issued the final EA on August 14, 2007.

FERC then issued the August 15 Order in the FERC Proceeding authorizing AmerenUE to commence the Project Reconstruction. The Coalition moved for late intervention in the FERC Proceeding, for a stay of the August 15 Order, and made a request for rehearing ("Rehearing Request"). FERC granted the Coalition leave to intervene in the FERC Proceeding in its Order Denying Request for Rehearing ("Rehearing Order")[8] on December 20, 2007, but denied the Coalition's Rehearing Request, ruling that "Petitioners' arguments are not correct."[9] A true and correct copy of the Rehearing Order is appended hereto as Exhibit B.

MPA filed comments in the FERC Proceeding, but did not intervene in the FERC Proceeding in relation to the Commission's final Environmental Assessment ("EA") pertaining to reconstruction of the Project, or seek rehearing of the August 15 Order.[10] As discussed in

---

[7]    Draft EA at 17-18.

[8]    *AmerenUE*, 121 FERC ¶ 61,270 at P 9 (2007).

[9]    *Id.* at P 12.

[10]    To qualify as a "party" under FERC rules, an entity must fit into one of three categories: (1) a person filing any application, petition, tariff or rate filing, complaint, or any protest under section 19a(i) of the Interstate Commerce Act; (2) any respondent to a proceeding; or (3) any person whose intervention in a proceeding is effective under Rule 214. 18 C.F.R. § 385.102.

    Although Plaintiff MPA did not seek intervention or file a request for rehearing in the FERC Proceeding, it was active in the proceeding. Counsel for MPA also serves as counsel to the Sierra Club, which did petition for rehearing of the August 15 Order. Mr. Henry Robertson, counsel for the Sierra Club is also an attorney with the Great Rivers Environmental Law Center, as is counsel for MPA. *See* Rehearing Request at 17; *Press Release: Great Rivers Environmental Law Center and Missouri Parks Association sue over Taum Sauk*, http://www.greatriverslaw.org/documents/Pressrelease121107.pdf (Dec. 11, 2007); *Staff Bios–Henry B. Robertson*, http://www.greatriverslaw.org/documents/HenryRobertsonbio0806.pdf, *visited* Jan. 2, 2008.

detail in Section II, *infra*, intervenor status and a request for rehearing are prerequisites to judicial review of orders by the Commission. MPA could have requested intervention even after August 15, 2007.[11] This was the course taken by the Coalition. Although MPA was active in the proceeding, filing written comments and appearing in person at public meetings in the docket all related to reconstruction of the Project, MPA chose not to intervene or file a request for rehearing in the FERC Proceeding.

Prior to FERC's issuance of the Rehearing Order, on December 12, 2007, MPA filed the Complaint against FERC and AmerenUE seeking a declaratory judgment finding that FERC violated NEPA and the APA. The Complaint seeks preliminary and permanent injunctions against the Project Reconstruction until the alleged NEPA and APA violations are cured. The Complaint also seeks preliminary and permanent injunctions prohibiting the Project Reconstruction until FERC prepares a new EA or an Environmental Impact Statement ("EIS"). In short, the Complaint seeks the very same relief already sought by and denied to the Coalition in the FERC Proceeding.[12]

---

As discussed *infra*, in light of these facts and MPA's cognizant failure to seek intervention at FERC and to instead file this action, this Complaint appears to be a collateral attack on FERC and AmerenUE in district court that, as explained below, is not permitted under the Federal Power Act.

[11]    See *AmerenUE*, 121 FERC ¶ 61,270 at P 8 (2007) ("Although Petitioners filed their request as a motion for late intervention, Commission staff did not establish a deadline for filing motions to intervene in any of the public notices issued in this proceeding. Therefore, Petitioner's motion was not late . . . .").

[12]    In its first count in the Complaint, MPA alleges that FERC violated NEPA by failing to consider alternatives and foreseeable impacts related to reconstruction. MPA alleges that the EA was defective because, in general, FERC limited the temporal scope of the impact analysis to activities related to reconstruction, but did not consider impacts related to future operation of the Project. *See* Complaint at 8-9. MPA alleges that FERC should have considered operational impacts because reconstruction authorization is sufficiently related to Project relicensing and future operations. *Id.*

Similarly, the first issue raised in the Coalition's rehearing request at FERC is: "Whether the Commission erred in refusing to consider the cumulative impacts associated with the future operation of the facility in its [EA] of the proposed rebuild of the Taum Sauk pumped storage facility." Rehearing Request at 2.

In its second count in the Complaint, MPA argues that FERC violated NEPA by issuing a defective EA[12] and a Finding of No Significant Impact ("FONSI"), rather than an Environmental Impact Statement ("EIS"). Complaint at 11. This count takes issue with FERC's determination that no EIS was required because FERC determined impacts were not significant. MPA alleges that reconstruction, relicensing, and project operation constitute a major federal action for which an EIS is required. *Id.* This count arises from the first count because it implies that the FONSI rests on the narrow temporal scope of FERC's EA.

## ARGUMENT

I.     **The Complaint Should Be Dismissed Because Appeals of FERC Orders Must Be Brought in an Appropriate Federal <u>Appellate</u> Court.**

The FPA provides the exclusive method by which MPA may bring a challenge to the decisions of FERC in the FERC Proceeding. Without question, such review is what MPA seeks in its Complaint, which states that its general purpose is to "challenge[] the actions of the Federal Energy Regulatory Commission ('FERC') in issuing a defective Environmental Assessment, together with a Finding of No Significant Impact, in lieu of an Environmental Impact Statement concerning the reconstruction of the 'Taum Sauk Project in southeast Missouri.'" Complaint at 1.[13] MPA, however, has sought relief in the improper forum. Section 313 of the Federal Power Act ("FPA"), 16 U.S.C. 825l(b), requires that appeals of FERC orders be taken directly to a proper federal appellate court.

A.     **MPA Failed to Intervene in the FERC Proceeding and Cannot Properly Obtain the Relief it Seeks in Any Court.**

MPA was well aware of the FERC Proceeding and in fact filed no fewer than four separate filings with FERC regarding the Taum Sauk project. Yet, MPA never took the step of

---

Similarly, the Coalition's second issue for rehearing at FERC is: "Whether the Commission's [EA] adequately discloses sources of information on which Commission staff relied, and whether it is supported by substantial evidence." The Coalition alleges that FERC failed to explain its reversal in position between the draft and final EAs, with respect to impacts of clearing and grubbing a thirteen acre lay-down area. Additionally, the Coalition takes issue with FERC's "need for power" statement in the EA, in light of a newspaper article that suggests Ameren may have surplus capacity. MPA does not address these issues in the Complaint.

MPA's third count in the complaint alleges that FERC violated the APA. Specifically, MPA alleges that FERC's NEPA analysis is arbitrary, capricious, an abuse of discretion, in excess of statutory authority, and unsupported, among other things. *See* Complaint at 12. Similarly, the Coalition's third issue for rehearing at FERC is: "Whether the Commission's Letter Order authorizing Taum Sauk Upper Reservoir Reconstruction is supported by substantial evidence."

MPA carefully avoids reference to the FERC order, of course, so as to avoid the application and bar of Section 313 to this action. Instead, MPA focuses on the NEPA analysis. The very relief MPA seeks, however, is in effect a determination of issues bearing directly on the validity of FERC's process in issuing its order. This very issue remains pending in the FERC Proceeding and is clearly subject to review in a proper federal Court of Appeals.

[13]     Indeed, the Complaint's prayer requests the court to: declare that "FERC failed to adequately evaluate the reasonable alternatives to the Taum Sauk project…"; to declare that "FERC's actions are arbitrary, capricious, an abuse of discretion, in excess of statutory jurisdiction, authority and limitations…"; and to enjoin FERC and AmerenUE from "any activities in furtherance of the construction of the project." Complaint at 12-13.

intervening in the FERC Proceeding and never asked FERC to reconsider its decision on the

final EA. These are the precise and exclusive steps, however, set forth in the FPA as

prerequisites to judicial review. MPA's willful decision not to avail itself of the full processes

provided by the FPA and FERC's regulations does not create an opportunity to bring suit in this

court under any applicable law. In fact, the D.C. Circuit has held that jurisdiction in this Court is

not proper even when complainants claim that they did not seek to become parties in the

contested agency proceeding only because the agency did not provide adequate notice of the

proceeding. *City of Rochester v. Bond*, 603 F.2d 927, 938 (D.C. Cir. 1979). The D.C. Circuit

stated that such complainants should seek reconsideration by the agency upon learning of the

agency action at issue. *Id.* ("Upon learning of the 'no hazard' determination and the construction

permit, [complainants] should have sought reconsideration, raising both the 'no notice' and the

NEPA allegations."). The Court explained that the complainants would then be able to seek

appellate review of the agency's disposition of their request for reconsideration, regardless of

whether the agency agreed to reconsider the prior determination. *Id.* ("If the matter is reopened,

any ensuing final order then may be reviewed in accordance with the review statute. If on the

other hand, the agency for any reason declines to reopen the matter, that decision itself would be

a statutorily reviewable order.").

Accordingly, to allow MPA's current suit would be to encourage and condone a party's

willfully sitting on its rights to participate fully in an administrative process and instead bringing

an impermissible collateral attack on that process.

> **B.    Only a Federal Appellate Court May Hear an Appeal of a FERC Order.**

MPA was very active in the FERC Proceeding, filing several documents in the FERC

docket. Whether or not the MPA was technically a "party" under Section 313 of the FPA to the

FERC Proceeding,[14] its attempt to challenge the FERC Proceeding in this Court and at this time is inappropriate.

FPA Section 313 provides that "No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do."[15] Thus, MPA was required, as several parties did, to seek rehearing of the August 15 Order, but it failed to do so.

And now that the rehearing process is complete, had MPA properly obtained party status in the FERC Proceeding, it would be permitted to seek judicial review before a federal *appellate* court. Section 313 notes in pertinent part:

> Any party to a proceeding under this Act aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the Circuit Court of Appeals of the United States for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.

Thus, MPA is precluded from bringing this action before this Court.

This clear reading of Section 313 has been repeatedly confirmed by federal courts, including the United States Supreme Court in *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958), where the court held:

> Congress in § 313 (b) prescribed the specific, complete and exclusive mode for judicial review of the Commission's orders. *Safe Harbor Water Power Corp. v. Federal Power Comm'n*, 124 F.2d 800, 804, *cert. denied*, 316 U.S. 663. It there

---

[14]    As noted earlier, to qualify as a "party" under FERC rules, an entity must fit into one of three categories: (1) a person filing any application, petition, tariff or rate filing, complaint, or any protest under section 19a(i) of the Interstate Commerce Act; (2) any respondent to a proceeding; or (3) any person whose intervention in a proceeding is effective under Rule 214. 18 C.F.R. § 385.102.

[15]    Notably, FPA Section 313 specifies that "[t]he application for rehearing shall set forth specifically the ground or grounds upon which such application is based", in order to conserve the agency's resources.

provided that any party aggrieved by the Commission's order may have judicial review, upon all issues raised before the Commission in the motion for rehearing, by the Court of Appeals which "shall have exclusive jurisdiction to affirm, modify, or set aside such order in whole or in part," and that "the judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification . . . ." It thereby necessarily precluded de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review. <u>Hence, upon judicial review of the Commission's order, all objections to the order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all.</u> For Congress, acting within its powers, has declared that the Court of Appeals shall have "exclusive jurisdiction" to review such orders, and that its judgment "shall be final," subject to review by this Court upon certiorari or certification.

*Id.*, 357 U.S. at 336 (underlined emphasis added).

Similarly, in 1978, this Court determined that a litigant may not bring to the district court a challenge to the Federal Communications Commission ("FCC") and Federal Aviation Administration's ("FAA") approval of a radio tower, based on an alleged violation of the National Environmental Policy Act, 42 U.S.C. §§ 4321-72. *City of Rochester v. Bond*, 603 F.2d 927, 929 (D.C. Cir. 1979). The United States Court of Appeals for the District of Columbia Circuit upheld this Court, citing language in the judicial review sections of the FCC and FAA's organic statutes that mirror FPA Section 313:

First, we disagree that the district court may exercise concurrent jurisdiction merely because a violation of NEPA is alleged. The allegation may be raised directly in the courts of appeals; and insofar as it may affect the lawfulness of a directly appealable order we think it must be.

*Id.* at 936.

Thus, the D.C. Circuit held:

when the Supreme Court construed the nearly identical language in the Federal Power Act it held that the "simple words of plain meaning . . . leave no room to doubt the congressional purpose and intent" to give the courts of appeals exclusive jurisdiction. We have no reason to resist this construction.

*Id.,* citing *City of Tacoma.*

The D.C. Circuit later cited *City of Rochester* with approval in an opinion

determining its jurisdiction over an appeal of a FERC order implementing a substantive

mandate from a statute other than the FPA. See *Midwest Indep. Transmission Sys.*

*Operator, Inc. v. FERC*, 388 F.3d 903, 910 (D.C. Cir. 2004) ("we interpret section 825l

to afford unitary review of FPA-related orders, including those that implement

substantive mandates from other statutes.").

## II.    Neither the APA nor NEPA Provides this Court with Subject Matter Jurisdiction.

While the Coalition sought to intervene *via* the appropriate mechanisms under law in the

FERC Proceeding, MPA launched this action pursuant to NEPA, which provides no private right

of action,[16] and the APA, which only provides for such an action in certain circumstances not

present here. MPA's Complaint seeks to hedge the Coalition's fortunes at FERC through a

transparent end-run around the processes set forth in Section 313 of the FPA. MPA's attempt,

however, should be rejected, as courts have uniformly held that the FPA provides the exclusive

process for challenging FERC actions under the FPA.

MPA's *modus operandi* in bringing a claim pursuant to the APA is obvious. The APA

contains no requirement, as is found in Section 313 of the FPA, that the MPA have been a party

to the process from which it now seeks relief.[17] *Compare* 5 U.S.C. § 702 ("A <u>person</u> suffering

---

[16]    *See* 42 U.S.C. §§ 4321-4370f; *Karst Envtl. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1296 (D.C. Cir. 2007), citing *Pub. Citizen v. United States Trade Representative*, 5 F.3d 549, 551 (D.C. Cir. 1993), which held that NEPA creates no private right of action. *See also Central South Dakota Co-op. Grazing Dist. v. Secretary of U.S. Dept. of Agriculture*, 266 F.3d 889, 894 (8th Cir. 2001).

[17]    However, even for claims arising under the APA, the D.C. Circuit has suggested that the proper course of action for a complainant who was not a party to the agency proceeding is to first seek reconsideration by the agency. *City of Rochester*, 603 F.2d at 938 ("The course we contemplate is straightforward. Under the Administrative Procedure Act, application for agency reconsideration generally is not a prerequisite of judicial review of an order that is otherwise final. However, under general principles of review, courts will ordinarily not consider matters not raised before the agency, a circumstance likely to arise when a complainant was not a party to the agency

legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is

entitled to judicial review thereof…," *with* 16 U.S.C. § 825l(b) ("Any <u>party</u> to a proceeding

under this Act aggrieved by an order issued by the Commission…") (emphases added).

Although some courts have allowed independent APA/NEPA actions,[18] none have done

so when the challenged NEPA action was part of a prior or pending FERC proceeding and, in

fact, most courts have forbidden collateral attacks premised upon APA/NEPA where a directly

governing statute provides exclusive authority for challenging the agency action.  Such is the

case with the Federal Power Act, which the Supreme Court declared in *City of Tacoma* to be "the

**exclusive** mode for judicial review of the Commission's orders."  *City of Tacoma*, 357 U.S. at

336 (emphasis added).  *See also* 16 U.S.C. § 825l(b) ("Upon the filing of such petition such court

shall have jurisdiction, which upon the filing of the record with it <u>shall be exclusive</u>, to affirm,

modify or set aside such order in whole or in part." (emphasis added)).[19]

---

proceeding, and probably inevitable where, as here, a complainant objects to the agency's failure to give notice. In such cases the proper course (and the one expressly mandated by the Communications Act), is to seek reconsideration by the agency.  If the matter is reopened, any ensuing final order then may be reviewed in accordance with the review statute.  If on the other hand, the agency for any reason declines to reopen the matter, that decision itself would be a statutorily reviewable order.").

[18]    *Central South Dakota Co-op.*, 266 F.3d 889; *Sierra Club v. U.S. Army Corps of Engineers*, 446 F.3d 808 (8th Cir. 2006).

[19]    Similar provisions exist for the Natural Gas Act and Natural Gas Policy Act.  Natural Gas Act at 15 U.S.C. § 717r ("Any party to a proceeding under this Act aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia…"); Natural Gas Policy Act at 15 U.S.C. § 3416 ("Any person who is a party to a proceeding under this Act aggrieved by any final order issued by the Commission in such proceeding may obtain review of such order in the United States Court of Appeals for any circuit in which the party to which such order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia circuit…").

Under FPA Section 317, actions may be brought in district court to enforce a liability or duty created by, or to enjoin any violation of a FERC order.  *See, e.g., Louisiana Power & Light, Co. v. Ackel*, 616 F.Supp. 445, 447 (M.D. La 1985), citing 16 U.S.C. § 825p (dismissing a claim by a utility against a state utility commission because there is "nothing in the FERC opinion that orders any state regulatory commission to 'pass through' these expenses to retail customers by formula rates, as LP&L demands here").  However, courts have dismissed attempts to use Section 317 as a basis for injunctive relief, in order to circumvent judicial review of FERC orders under Section 313.  *See, e.g., Dilaura v. Power Authority of the State of NY*, 982 F.2d 73, 79 (2nd Cir. 1992) (rejecting appellants' contention "that they are free from these administrative constraints [the procedures for review of FERC actions as specified in Section 825l] because they are not seeking to review anything but only to compel [the Power Authority] to adhere to its own procedures") (noting that "[w]hile this argument has a certain semantic appeal, we reject it as

Notably, no reported case has ever allowed a party to challenge successfully a FERC order *via* a collateral action premised upon an APA/NEPA violation or similar statutes. *See, e.g., California Save Our Streams Council v. Yeutterm*, 887 F.2d 908, 911 (9th Cir. 1989) (holding that the district court had no jurisdiction to review NEPA/APA challenge to FERC action); *City of Tacoma v. National Marine Fisheries Service*, 383 F. Supp.2d 89, 92 (D.D.C. 2005) (finding that "specific provisions of the FPA that govern review of disputes concerning the licensing of hydroelectric facilities, like the Cushman Project, must preempt the general procedures for ESA and APA claims brought under general federal question jurisdiction"); *Southwest Center for Biological Diversity v. FERC*, 967 F.Supp. 1166, 1172-73 (D.Ariz. 1997) (dismissing challenge to FERC action premised upon the Endangered Species Act).

As the United States Supreme Court stated in *Bowen v. Massachusetts,* 487 U.S. 879, 903 (1988), "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action…." *See also Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2006), citing *Bowen, id.* ("The essential inquiry is whether another statutory scheme of judicial review exists so as to preclude review under the more general provisions of the APA."). Accordingly, because the FPA provides an exclusive and comprehensive scheme for judicial review of FERC's action, the Court should reject MPA's attempt to bypass the FPA and dismiss the Complaint with prejudice.

---

simply too facile"); *see also FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984) (holding that "[l]itigants may not evade these provisions [provisions placing exclusive jurisdiction for review of final FCC orders] by requesting the District Court to enjoin action that is the outcome of the agency's order").

## CONCLUSION

WHEREFORE, AmerenUE respectfully requests that this Court dismiss with prejudice

MPA's Complaint for Declaratory, Injunctive and Other Relief.

Respectfully submitted,

_____/s/_____

Charles A. Zdebski
Clifford S. Sikora
Jordan J. Abshire
TROUTMAN SANDERS LLP
401 Ninth Street, NW, Suite 1000
Washington, DC 20004-2134
(t) 202.274.2950
(f) 202.654.5632
(e-mail) charles.zdebski@troutmansanders.com

IN THE UNTIED SATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MISSOURI PARKS ASSOCIATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:07-cv-02233-RMC |
| FEDERAL ENERGY REGULATORY | ) | |
| COMMISSION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

UPON CONSIDERATION of the Motion of Union Electric Company, d/b/a AmerenUE,

Inc. to dismiss this action for lack of subject matter jurisdiction, its Statement of Points and

Authorities in Support thereof, and any opposition or support filed by the other parties in this

action, and being fully advised in the premises, it is hereby:

ORDERED:

This action is hereby dismissed with prejudice.


DATED this _____ day of _____, 2008.



_____
United States District Court Judge Rosemary M. Collyer

Copies to service list.