IN THE UNITED SATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MISSOURI PARKS ASSOCIATION              )
                                        )
            Plaintiff,                  )
                                        )
     v.                                 )
                                        )        Case No. 1:07-cv-02233-RMC
FEDERAL ENERGY REGULATORY               )
COMMISSION, et al.                      )
                                        )
            Defendants.                 )

## UNION ELECTRIC COMPANY'S RESPONSE TO MOTION OF FEDERAL ENERGY REGULATORY COMMISSION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant Union Electric Company d/b/a AmerenUE ("AmerenUE"), by its counsel, hereby files this response memorandum in support of the Federal Energy Regulatory Commission's ("FERC") motion to dismiss for lack of subject matter jurisdiction the action filed by Plaintiff Missouri Parks Association ("MPA"). AmerenUE agrees with and supports FERC's motion to dismiss. This response will serve only to highlight two points.

First, MPA has now brought to the right forum its legal concerns with FERC's orders regarding AmerenUE's Taum Sauk Project. On February 15, 2008, MPA filed a Petition for Review with the United States Court of Appeals for the Eighth Circuit, a copy of which is attached as Exhibit A (the "Petition"). The Petition asks the Eighth Circuit to review FERC's December 20, 2007 Order on Rehearing "concerning construction of the Taum Sauk upper reservoir . . .together with" FERC's August 15, 2007 order and August 14, 2007 Environmental Assessment and Finding of No Significant Impact concerning "construction of the Taum Sauk

upper reservoir." In other words, MPA has asked the Eighth Circuit to rule upon the very same issues it improperly brought before this Court.

Second, it is clear that MPA's efforts to seek review of the same claims by both courts are by design, not by coincidence, inadvertence or circumstance. The same law firm, Great Rivers Environmental Law Center, located in St. Louis, Missouri, that filed MPA's complaint in this Court, filed MPA's Petition in the Eighth Circuit. AmerenUE ascribes no improper motives to MPA's parallel filings. AmerenUE simply points out that now that MPA has determined the proper forum and petitioned for review of its claims there, MPA cannot argue that its claims before this Court should remain.

WHEREFORE, for the reasons fully set forth in the Statement of Points and Authorities, accompanying AmerenUE's Motion to Dismiss and Reply in Support, FERC's Motion to Dismiss and this Response, AmerenUE respectfully requests that this Court dismiss with prejudice MPA's Complaint for Declaratory, Injunctive and Other Relief for lack of jurisdiction.

Respectfully submitted,

_____/s/_____

Charles A. Zdebski
Clifford S. Sikora
Jordan J. Abshire
TROUTMAN SANDERS LLP
401 Ninth Street, NW, Suite 1000
Washington, DC 20004-2134
(t) 202.274.2950
(f) 202.654.5632
(e-mail) charles.zdebski@troutmansanders.com

## CERTIFICATE OF SERVICE

I, Charles A. Zdebski, hereby certify that a copy of the foregoing Union Electric

Company's Response to Motion of Federal Energy Regulatory Commission to Dismiss for Lack

of Subject Matter Jurisdiction was served this 17th day of March 2008, by mailing a true copy

thereof to:

>Kathleen G. Henry
>Bruce A. Morrison
>Great Rivers Environmental Law Center
>705 Olive Street, Suite 614
>St. Louis, MO 63101-2208
>
>Federal Energy Regulatory Commission
>Jeffrey S. Dennis, Attorney
>Robert H. Solomon, Solicitor
>888 First Street, NE
>Washington, DC 20426
>
>Keith Morgan, Esq.
>Jeffrey A. Taylor, Esq.
>Rudolph Contreras, Esq.
>United States Attorney's Office
>555 Fourth Street, N.W.
>Washington, DC  20530

>_____/s/_____
>Charles A. Zdebski
>TROUTMAN SANDERS LLP
>401 Ninth Street, NW, Suite 1000
>Washington, DC 20004-2134
>(t) 202.274.2950
>(f) 202.654.5632
>(e-mail) charles.zdebski@troutmansanders.com

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

**FILED**

FEB **15** 2008

**MICHAEL GANS
CLERK OF COURT**

MISSOURI COALITION FOR )
    THE ENVIRONMENT, and )
                                  )

MISSOURI PARKS ASSOCIATION, )
                                  )

        Petitioners, )
                                  )

        v. ) No.
                                  )

FEDERAL ENERGY REGULATORY )
    COMMISSION, )
                                  )

        Respondent. )

## PETITION FOR REVIEW

Missouri Coalition for the Environment and Missouri Parks Association hereby petition the court for review of the order of the Federal Energy Regulatory Commission denying a request for rehearing and dismissing a request for stay concerning construction of the Taum Sauk upper reservoir issued on December 20, 2007, together with the order of the Federal Energy Regulatory Commission authorizing Ameren Services to proceed with construction of the Taum Sauk upper reservoir issued on August 15, 2007, along with the August 14, 2007, issuance of the Environmental Assessment and Finding of No Significant Impact by the Federal Energy Regulatory Commission concerning the construction of the Taum Sauk upper reservoir, and pray that these orders be set aside.

Bruce A. Morrison
Great Rivers Environmental Law Center
705 Olive Street, Suite 614
St. Louis, MO 63101-2208
Phone: (314) 231-4181
Fax: (314) 231-4184

Attorney for petitioners

**RECEIVED**

FEB **1 5** 2008

U.S. COURT OF APPEALS
EIGHTH CIRCUIT



EXHIBIT
A

# **FERC** Online - eLibrary (formerly FERRIS)



Print Version

## Federal Energy Regulatory Commission
## Docket Sheet
## Docket P-2277 (Selected Subdockets)

**Applicant(s)/Docket: AMEREN UE**

### Sub Docket: 005

**Docket Description:** Motion for Late Intervention and Request for Rehearing of August 15, 2007 Letter Order Authorizing Construction of the Taum Sauk Upper Reservoir Reconstruction

| | |
|---|---|
| **Filed By:** | INDIVIDUAL (NO DETAILED AFFILIATION GIVEN) |
| **Filed Date:** | 9/14/2007 |
| **Accession No:** | 20070914-5148 |
| **Description:** | Motion for Late Intervention and Request for Rehearing by American Rivers, Sierrs Club and Missouri Coalition for the Environment of August 15, 2007 Letter Order etc under P-2277. |
| **Information:** | FILE LIST     DOC INFO |
| **Source:** | eLibrary |

| | |
|---|---|
| **Filed By:** | AMEREN - UE |
| **Filed Date:** | 10/1/2007 |
| **Accession No:** | 20071001-5046 |
| **Description:** | Ameren's Answer in Opposition to the Motion for Late Intervention of the Missouri Coalition for the Environment, the Sierra Club and American Rivers. |
| **Information:** | FILE LIST     DOC INFO |
| **Source:** | eLibrary |

| | |
|---|---|
| **Issued By:** | SECRETARY OF THE COMMISSION, FERC |
| **Filed Date:** | 10/15/2007 |
| **Accession No:** | 20071015-3003 |
| **Description:** | Order granting Rehearing for Further Consideration re AmerenUE under P- |

2277.

| | |
|---|---|
| **Information:** | FILE LIST    DOC INFO |
| **Source:** | eLibrary |

| | |
|---|---|
| **Issued By:** | SECRETARY OF THE COMMISSION, FERC |
| | COMMISSIONERS & IMMEDIATE STAFF (THE COMMISSION) |
| **Filed Date:** | 12/20/2007 |
| **Accession No:** | 20071220-3020 |
| **Description:** | Order granting intervention, denying rehearing, and dismissing request for stay for AmerenUE under P-2277. |

| | |
|---|---|
| **Information:** | FILE LIST    DOC INFO |
| **Source:** | eLibrary |
| **FERC Citation** | 121FERC61,270 |

121 FERC ¶ 61,270
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners: Joseph T. Kelliher, Chairman;
Suedeen G. Kelly, Marc Spitzer,
Philip D. Moeller, and Jon Wellinghoff.

AmerenUE                                          Project No. 2277-005

ORDER GRANTING INTERVENTION, DENYING REHEARING, AND
DISMISSING REQUEST FOR STAY

(Issued December 20, 2007)

1.    Missouri Coalition for the Environment, the Sierra Club, and American Rivers
(Petitioners) seek intervention and rehearing of an August 15, 2007 letter order
authorizing Union Electric Company, doing business as AmerenUE (Ameren), licensee
for the Taum Sauk Project No. 2277, to start reconstruction and repair of the project's
upper reservoir. The project is located atop Proffit Mountain and on the East Fork Black
River in Reynolds County, Missouri. Petitioners also request either clarification of the
letter order or a stay. For the reasons discussed below, we grant intervention and deny
rehearing. We also grant in part the request for clarification, and dismiss the stay request
as moot.

## Background

2.    The Commission issued an original license for the Taum Sauk Pumped Storage
Project in 1965, with an expiration date of June 30, 2010.[1] Although Ameren has not yet
filed a relicense application, the licensee filed a notice of intent to apply for a new license
on February 17, 2005, and is currently involved in pre-application activities required for
relicensing.

3.    On December 14, 2005, the Project's upper reservoir breached, rendering the
facility inoperable. The upper reservoir overtopped when the pumps filling it failed to
shut off. Erosion undercut the rockfill dam, creating a breach that emptied the reservoir.
Floodwaters rushed down the west side of Proffit Mountain into the East Fork of the

---

[1] *Union Electric Co.*, 34 FPC 598 (1965), *modified on rehearing*, 35 FPC 316
(1966).

Project No. 2277-005                                                    2

Black River, destroying the home of the Johnson's Shut-Ins State Park superintendent and endangering his family. Flows flooded motorists on a nearby highway and significantly damaged the State Park, campground, and adjacent properties before entering the Lower Taum Sauk Reservoir. Fortunately, there were no fatalities. After an investigation, the Commission entered into an October 2, 2006 stipulation and consent agreement with Ameren and required the company to pay a $10 million civil penalty, as well as $5 million into an escrow account to fund enhancements at or near the project.[2]

4.     On February 5, 2007, Ameren filed a request to rebuild the upper reservoir. On February 13, 2007, Commission staff issued a notice of intent to prepare an environmental analysis. On February 21, 2007, Commission staff issued a scoping document for the proposed reconstruction, and subsequently held two public scoping meetings near the project on March 12, 2007. Staff released a draft environmental assessment (EA) on June 7, 2007. Petitioners' representatives attended one of the meetings and filed comments on both the scoping document and the draft EA.

5.     Commission staff issued a final EA on August 14, 2007. The EA concluded that the proposed reconstruction, with staff's recommended mitigation measures, would not constitute a major federal action significantly affecting the quality of the human environment. The next day, on August 15, 2007, the Director of the Commission's Office of Energy Projects issued a letter authorizing Ameren to start reconstructing the upper reservoir. On September 14, 2007, Petitioners filed a motion for late intervention and request for rehearing of the Director's letter order. On October 1, 2007, Ameren filed an answer in opposition to the motion for late intervention.

6.     Petitioners seek intervention for the purpose of requesting rehearing. They request that the Commission stay the Director's August 15, 2007 letter order until the Commission issues a supplement to the EA that addresses the cumulative and indirect impacts of the rebuild proceeding, including the reasonably foreseeable impacts caused by the future operation of the project. In the alternative, they request that the Commission amend the letter order to address how Ameren will assure that reconstruction will not interfere with timely relicensing of the project, and to expressly reserve the Commission's authority to require modifications to the facility as part of relicensing. Petitioners also take issue with staff's conclusions in the EA and letter order.

7.     Ameren maintains that Petitioners have not shown they have a right to intervene and participate as a party, and have not demonstrated good cause for their failure to file a timely motion to intervene. Ameren further argues that Petitioners' concerns regarding future relicensing decisions are premature.

---

[2] *AmerenUE*, 117 FERC ¶ 61,001 (2006).

Project No. 2277-005                                                                                3

## Discussion

8.    Under rule 713 of the Commission's Rules of Practice and Procedure,[3] only a
party to a proceeding may file a request for rehearing. Thus, Petitioners correctly
recognize that they may not seek rehearing of the Director's letter order without
simultaneously filing a motion to intervene. Although Petitioners filed their request as a
motion for late intervention, Commission staff did not establish a deadline for filing
motions to intervene in any of the public notices issued in this proceeding. Therefore,
Petitioners' motion to intervene was not late, and there was no need for them to establish
good cause for late intervention in support of their motion.[4]

9.    In light of the special circumstances surrounding the accident and the level of
community interest in the proposed reconstruction, Commission staff determined, and we
agree, that public notice of staff's environmental review and public participation in its
scoping process was appropriate. Petitioners participated in scoping and filed comments
on the draft EA. In addition, Petitioners have participated in the pre-filing phase of the
relicensing process for the Taum Sauk Project.[5] Accordingly, we will grant their
intervention request and address their arguments on rehearing.

10.    Petitioners argue that the Commission erred in limiting the scope of the EA to the
immediate impacts of the proposed reconstruction, without also considering the
environmental impacts associated with future operation of the Taum Sauk Project. They
argue that, under the National Environmental Policy Act (NEPA), the Commission must
disclose all significant impacts from projects, including not only direct impacts but also
indirect impacts, which include any impacts that are reasonably foreseeable as a result of
the proposed action. Petitioners maintain that the Commission's decision to allow the

---

[3] 18 C.F.R. § 385.713 (2007).

[4] In post-licensing proceedings concerning matters for which entities are given a
specific consultation role and no intervention deadline is established, a motion to
intervene is timely if it precedes or accompanies a request for rehearing of an order
disposing of those matters. *See Pacific Gas & Electric Co.*, 40 FERC ¶ 61,035 at 61,099
and n. 13 (1987). In this case, Petitioners were not given a consultation role and
therefore could not demonstrate that they had a right to intervene. Nevertheless, because
no deadline was established, their motion was timely, and we may grant it in our
discretion.

[5] In that regard, Petitioners point out that, because Commission staff did not
establish a separate sub-docket for the rebuild proceeding but instead used the same sub-
docket for filings related to both the rebuild and the relicensing proceeding, it was
unclear whether these two matters were related or distinct. *See* Petitioners' request for
rehearing at 8.

Project No. 2277-005                                                        4

upper reservoir to be rebuilt "will necessarily result in the operation of the project"[6] and
that, as a result, issuance of a new license for the project is a reasonably foreseeable
future action that must be considered now, rather than later.

11.    Petitioners consider it "inconceivable to think that the Commission would allow a
licensee to construct a project and operate it for a single year (or less) only to deny the
project a new operating license or issue a license that requires substantially different
design or operational requirements."[7] They regard as "unpersuasive" the Director's
statement that authorizing the reconstruction will not affect the Commission's future
relicensing decision.[8] Petitioners therefore conclude that the Commission's NEPA
analysis must consider the cumulative impacts of the decision to authorize reconstruction,
including the reasonably foreseeable operational impacts that will occur under both the
current license and any future license for the project.

12.    Petitioners' arguments are not correct. As we have explained in previous cases,[9]
section 10(c) of the Federal Power Act (FPA)[10] requires a licensee to "maintain the
project works in a condition of repair . . . for the efficient operation of said works in the
development and transmission of power, [and to] make all necessary renewals and
replacements . . . ." A licensee is responsible for keeping a project safe and operational.
Failure to do so will place the licensee at risk of possible enforcement action, or may
cause the Commission to regard the licensee's behavior as an implied surrender of the

---

[6] Petitioners' request for rehearing at 9.

[7] *Id.* at 10.

[8] *Id.*

[9] *See, e.g., El Dorado Irrigation District,* 94 FERC ¶ 61,031 at 61,118 n. 14
(2001) (authorizing dam reconstruction work while relicense application was pending and
project was operating under annual license); *Citizens Utilities Co.,* 68 FERC ¶ 61,310 at
62,285 (1994) (authorizing dam stabilization and spillway reconstruction at one of the
project's five dams while relicense application was pending and removal of that
particular dam was at issue in the relicensing proceeding). In the latter case, the licensee
subsequently amended its relicense application and obtained authorization to remove the
dam instead of rebuilding it. *See Citizens Utilities Co.,* 71 FERC ¶ 61,006 (1995), and
78 FERC ¶ 61,214 (1997).

[10] 16 U.S.C. § 803(c) (2000).

Project No. 2277-005                                                                5

license.[11] These principles are reflected in Article 21 of the license for the Taum Sauk Project.[12]

13.     Unless the Commission determines that circumstances would warrant ceasing operation, a licensee has the right to operate its project in a manner consistent with the terms of the license. In the normal case, the Commission will ensure that a licensee repairs or replaces damaged project works in a timely manner. If a licensee has indicated that it will not seek a new license for a project, the Commission may permit the licensee to defer any needed repairs, provided that safety is not an issue and the public interest does not require immediate restoration of the project.[13] However, if a licensee is applying for a new license, the Commission has permitted the licensee to undertake necessary project repairs prior to a decision on the relicense application in all but extraordinary circumstances.[14] Thus, Ameren's request to rebuild the upper reservoir

_____

[11] *See Southern California Edison Co.*, 106 FERC ¶ 61,212 at P 16 (2004).

[12] Article 21 provides:

> If the Licensee shall cease or suffer essential project property
> to be removed or destroyed or to become unfit for use,
> without replacement, or shall abandon or discontinue good
> faith operation of the project for a period of three years, or
> refuse or neglect to comply with the terms of the license and
> the lawful orders of the Commission mailed to the record
> address to the Licensee or its agent, the Commission will
> deem it to be the intent of the Licensee to surrender the
> license, and not less than 90 days after public notice may in
> its discretion terminate the license.

Article 21, Form L-11, *Terms and Conditions of License for Unconstructed Major Project Affecting the Interests of Interstate or Foreign Commerce* (July 1, 1965), 34 FPC 602 (1965), *incorp'd by ref.*, *Union Electric Co.*, 34 FPC 598, 601 (1965) (Ordering Paragraph C).

[13] *See El Dorado Irrigation District*, 82 FERC ¶ 61,255 at 62,021 (1998) (dismissing complaint and finding that licensee's deferral of project repairs while it was in the process of surrendering its license did not violate the FPA or license terms).

[14] *See Swift Creek Power Co.*, 61 FERC ¶ 61,277 (1992) (staying the effectiveness of a 1981 order authorizing rehabilitation and expansion of a project up for relicensing, finding that, because 11 years later the reconstruction had not yet commenced, it was in the public interest to revisit the matter in the pending relicensing proceeding).

Project No. 2277-005                                                6

was consistent with the FPA and the terms of its license, and staff properly approved it without requiring that the reconstruction await a decision on relicensing.

14.      Moreover, as staff correctly noted in response to comments on the draft EA,[15] the Director's approval of the dam reconstruction does not prejudice the Commission's decision on the relicense application. In contrast to a repair application, in a relicense proceeding both the FPA and NEPA require the Commission to examine whether the renewed commitment of a public resource to hydroelectric generation will be best adapted to the comprehensive development of the waterway for beneficial public purposes.[16] This could involve major changes in project facilities or operation, new environmental measures that may substantially alter project economics, or in rare cases, perhaps even a determination that the project should no longer be used for power generation.[17] In deciding to proceed with the reconstruction now, Ameren necessarily assumes that risk. In short, there is no legal or factual basis for concluding, as Petitioners maintain, that relicensing should be considered a reasonably foreseeable consequence of the reconstruction authorization. Consequently, there is no basis for concluding that the EA was in any way deficient for failing to include in its cumulative effects analysis the effects of future project operation that may result from relicensing. Staff properly restricted the scope of the EA to the impacts associated with rebuilding the upper reservoir.

15.      Significantly, Petitioners do not assert, either here or in the relicensing proceeding, that the Taum Sauk Project should be decommissioned or that authorizing the reconstruction of the project will preclude the imposition of any particular environmental measure in a new license. Thus, Petitioners' concerns about the Commission prejudging relicensing are purely theoretical.

16.      Contrary to Petitioners' request, we need not expressly reserve our authority to require changes to the project facilities or operation as part of relicensing. That authority is inherent in the relicensing process. There is no presumption, either equitable or legal,

---

[15] *See* Appendix A to the final EA at p. A-2.

[16] *See Yakima Tribes v. FERC*, 746 F.2d 466, 475-77 (9th Cir. 1984), *cert. denied*, 471 U.S. 1116 (1985).

[17] *See City of Tacoma, Washington v. FERC*, 460 F.3d 63, 74 (D.C. Cir. 2006).

Project No. 2277-005                                                                 7

against the Commission's requiring such changes in any new license that may be issued for the Taum Sauk Project.[18]

17.    Petitioners argue that the EA fails to provide substantial evidence to justify staff's recommendation that Ameren be allowed to clear 13.2 acres of forest for a staging area to be used during the reconstruction. Petitioners correctly point out that, in the draft EA, staff found that the clearing and grading of this forested area would cause long-term negative effects on wildlife habitat, and therefore recommended that the licensee not clear this area. They also point out that the Missouri Department of Natural Resources (Missouri DNR) filed comments in support of staff's recommendation that the area not be cleared. Petitioners then assert that Commission staff reversed its recommendation in the final EA without providing "any evidence in support of its conclusion."[19]

18.    Petitioners overlook the fact that Commission staff reevaluated this issue in the final EA, not only in response to Ameren's comments, but also taking into account Ameren's July 31, 2007 filing in response to the Missouri DNR's concerns. As discussed in the final EA, Ameren stated that there are no practical alternatives for the location of this staging area, and staff's recommendation that this area not be cleared would affect plans for providing a safe construction environment. Ameren further stated that if this staging area were not available, some construction equipment would have to be moved offsite, resulting in increased traffic along public roads, and increased noise and air quality impacts to nearby residences. Ameren also noted that its dam safety engineering consultants considered the area essential for the safe and efficient reconstruction of the upper reservoir.[20] In response to the Missouri DNR's concerns about visual impacts of the clearing, Ameren filed a plan that would require grading into the area from east to

---

[18] Petitioners also request that we amend the August 15, 2007 letter order to address how Ameren will assure that reconstruction will not interfere with timely relicensing of the project. Petitioners do not explain or otherwise address the reasons for their request. Ameren recently filed its draft license application with the Commission and transmitted it to the stakeholders in the relicensing, requesting their comments within 90 days. *See* letter to Kimberly Bose, Commission Secretary, from Thomas Hollencamp, Ameren (filed October 17, 2007). In its correspondence regarding the draft application, Ameren noted that, because of the impacts of the upper reservoir breach, some additional studies will be needed to assess the existing environment and to define environmental resources when the project is back in operation. *Id.* at 2. Ameren must file its application for a new license on or before June 30, 2008. Relicensing is a separate matter from project reconstruction, and any concerns about the timing of relicensing should be raised and considered in that proceeding.

[19] Petitioners' request for rehearing at 13.

[20] Final EA at 71.

20071220-3020 Issued by FERC OSEC 12/20/2007 in Docket#: P-2277-005

Project No. 2277-005                                          8

west at a gradual slope, thus allowing the use of the space without having a scenic impact on the ridgeline view from Johnson's Shut-Ins State Park and locations along the Ozark Trail.[21] Commission staff found that, with the 40-50 foot high tree line, this approach would shield the cleared area from view for most of the year.[22] Staff further found that erosion control measures would minimize soil loss, and that the licensee should be required to mitigate for the loss of forest habitat by developing and implementing a reforestation plan.[23]

19.    As the foregoing discussion demonstrates, Commission staff explained the reasons for changing its recommendation to allow the clearing of the staging area, and analyzed the environmental effects of Ameren's revised proposal. Nothing more is required under NEPA. We therefore find that final EA provides substantial evidence in support of staff's recommendation.

20.    Petitioners argue that the final EA fails to justify Commission staff's statement that there is a need for power from the project in the face of competing evidence to the contrary. Petitioners maintain that the EA simply states that the project generates power for use in the region during periods of peak demand. They add that, in comments on the draft EA, Missouri Coalition for the Environment pointed out that, shortly after the collapse of the upper reservoir, Ameren announced that it was buying three more power plants that would provide sufficient generating capacity and reserve power to serve its Missouri customers the following summer, even without the Taum Sauk Project. They criticize the final EA for failing to address this evidence.

21.    The reconstruction of the upper reservoir is not a licensing action under the FPA. Rather, it is a compliance matter that falls under the Commission's project safety authority under Part 12 of its regulations.[24] For licensing actions, need for power is one of the many public interest factors that the Commission must consider in determining whether the project should be licensed under FPA section 10(a)(1). In contrast, the Commission is not required to revisit these section 10(a)(1) factors for post-licensing

---

[21] *Id.* at 69.

[22] *Id.*

[23] *Id.* at 72-73.

[24] *See* 18 C.F.R. Part 12 (2007). Among other things, Part 12 authorizes the Regional Engineer or other authorized representative of the Commission to require an applicant or licensee to take any action with respect to the design, construction, operation, maintenance, repair, use, or modification of the project or its works that is, in the judgment of that official, either necessary or desirable. 18 C.F.R. § 12.4(b)(2)(iv) (2007).

Project No. 2277-005                                                                           9

matters such as project repairs, reconstruction, or compliance filings.[25] Commission staff
was not required to make a finding in the EA that power is needed before recommending
that Ameren be allowed to reconstruct the upper reservoir and return the project to
service, because these matters are governed by FPA section 10(c) and Article 21 of the
existing license. The Commission will consider whether there is a need for power in the
upcoming relicensing proceeding.

22.    Compliance and review actions that do not have a significant effect on the
environment are categorically excluded from the requirement to prepare an EA,[26]
although the Commission may elect to prepare an environmental analysis for an action
that is otherwise categorically excluded from NEPA analysis.[27] In this case, Commission
staff chose to prepare an EA, and followed its usual practice of identifying the purpose
and need for the proposed action as part of its analysis.[28] In a licensing action, need for
power and need for the proposed action are closely aligned, because even if a project has
multiple purposes, one of them is the generation of electric power. For reconstruction,
however, the purpose and need for the proposed action are different: the purpose of the
action is to authorize the reconstruction, and the action is needed so that the project can
resume power generation as provided in the license. During the term of a license, the
Commission would have no basis for revoking it simply because new sources of
replacement power had become available. Similarly, the Commission could not prevent a
licensee from repairing its licensed project based on such a showing. Thus, we conclude
that need for power is not relevant in this proceeding. Accordingly, Commission staff
was not required to consider it in the EA, and staff adequately described the purpose and
need for the proposed action by stating that rebuilding the Taum Sauk Project would
allow project power to again be available in meeting part of the regional need for on-peak
power.

23.    Petitioners maintain that, because the August 15, 2007 letter order relies on a
flawed EA which was not itself supported by substantial evidence, the letter order also is
not supported by substantial evidence. As we have seen, however, Petitioners' arguments
concerning the EA are unfounded. We therefore find no basis for concluding that the
letter order lacks evidentiary support.

---

[25] See *Marysville Hydro Partners*, 62 FERC ¶ 61,011 at 61,041 (1993).

[26] See 18 C.F.R. § 380.4(a)(3) (2007).

[27] See 18 C.F.R. §380.4(b) (2007).

[28] See 40 C.F.R. § 1502.10(d) (2007), which lists "[p]urpose of and need for
action" as part of the recommended format of the Council on Environmental Quality
(CEQ) for an environmental impact statement (EIS). Commission staff follows the same
CEQ-recommended format in preparing an EA.

Project No. 2277-005                                                                                    10

The Commission orders:

(A) The motion to intervene filed on September 14, 2007, by the Missouri
Coalition for the Environment, the Sierra Club, and American Rivers in this proceeding is
granted.

(B) The request for rehearing filed on September 14, 2007, by the Missouri
Coalition for the Environment, the Sierra Club, and American Rivers in this proceeding is
denied.

(C) The request for a stay of the Director's August 15, 2007 letter order, filed on
September 14, 2007, by the Missouri Coalition for the Environment, the Sierra Club, and
American Rivers in this proceeding is dismissed as moot. The alternative request for
clarification of the August 15, 2007 letter order is granted to the extent discussed in this
order.

By the Commission.

(SEAL)


                                    Nathaniel J. Davis, Sr.,
                                    Deputy Secretary.

FEDERAL ENERGY REGULATORY COMMISSION
WASHINGTON, D C 20426

OFFICE OF ENERGY PROJECTS

August 15, 2007

In reply refer to:
P-2277
NATDAM No. MO30041

Mr. Thomas L. Hollenkamp
Chief Dam Safety Engineer
Ameren Services
One Ameren Plaza
1901 Chouteau Avenue
St. Louis, MO 63166-6149

RE: Authorization to Proceed with Construction: Taum Sauk Upper Reservoir
Reconstruction

Dear Mr. Hollenkamp:

I hereby authorize Ameren Services to start construction for the Taum Sauk
(Project No. 2277) Upper Reservoir Reconstruction, contingent upon completing
the following items:

1. The submittal, review and approval of the final Quality Control and
   Inspection Program (QCIP) as discussed by our letter dated August 3, 2007.

2. The submittal, review and approval of the final design, plans and
   specifications which reflect the recommendations of the Board of
   Consultants (BOC) and previous Federal Energy Regulatory Commission
   (FERC or Commission) staff's comments on the preliminary design
   submittals. These documents have been discussed and modified on
   numerous occasions, and the final modifications must be agreed upon by
   you, your design consultant, your BOC, and FERC staff. Our review
   comments as discussed in our August 2 and August 3, 2007 letters should
   be addressed in the final design, and the Plans and Specifications.

3. Your submittal and our approval of a plan and schedule for refilling the
   reservoir that satisfies the established engineering and environmental
   criteria.

Upon awarding the construction contract, we would like to meet with you,
your design consultant, the BOC, and the contractor, to make all parties aware of
FERC's authority in the construction process. Given the critical nature of this
construction with regard to dam safety and public safety, establishing clear lines of

Unofficial FERC-Generated PDF of 20070815-0100 Issued by FERC OSEC 08/15/2007 in Docket#: P-2277-000

2

communication prior to construction is essential. We encourage you to obtain all necessary permits as expeditiously as possible.

Commission staff has prepared an environmental assessment (EA) which examined the proposed action as well as staff's alternative. As you know, the draft EA was issued June 7, 2007, for the proposed reconstruction of the upper reservoir, and it was circulated to the public for review and comment. The draft EA was revised in light of comments received, and a final EA was issued August 14, 2007. The final EA is available in the Commission's public files for this proceeding and via eLibrary on FERC.gov.

The final EA identified a potential negative impact to terrestrial and soil resources that could result from clearing and grubbing forested areas for construction staging areas. The deforestation and removal of vegetation in the proposed laydown and staging areas can cause a negative impact to terrestrial resources unless the area is revegetated. Without proper reforestation practices there may be the potential for nuisance or invasive plant species to colonize the area. Reseeding of these areas needs to be done with the goal of restoring the area back to pre-cleared conditions. In order to mitigate for the loss of forest and terrestrial habitat, the final EA recommends that the licensee develop a reforestation plan in consultation with the resource agencies, for Commission approval.

The final EA also indicated that there may be a temporary short-term impact to recreational opportunities during the construction of the upper reservoir. Since the December 2005 failure event, all recreational opportunities at the project have been closed. Although the licensee proposed to keep all recreation amenities closed during construction, there appears to be no reason why a number of the recreational facilities at the lower reservoir cannot be reopened during this period. The final EA stated that limited access to the lower reservoir for fishing, hiking, wildlife viewing, and picnic areas should be available. The final EA recommends that the licensee, in consultation with the resource agencies, should develop a plan, for Commission approval, to provide limited recreational opportunities at the lower reservoir.

Lastly, the final EA recognizes that the licensee and resource agencies are currently completing consultation regarding the wetlands created by leakage from the previous upper reservoir dike and a Flow Management Plan. The final EA recommends that the Flow Management Plan be filed with the Commission for approval to help ensure minimal impacts to resources during construction and refilling periods, and to confirm the results of the licensee's consultation with the resource agencies.

Unofficial FERC-Generated PDF of 20070815-0100 Issued by FERC OSEC 08/15/2007 in Docket#: P-2277-000

3

The final EA concluded that the proposed rebuilding of the upper reservoir of the Taum Sauk Project, with staff's recommended mitigation measures, would not constitute a major federal action significantly affecting the quality of the human environment. Enclosed is a list of environmental requirements that are consistent with the recommendations of the final EA and must be complied with during the reconstruction of the upper reservoir.

The authorization for the reconstruction of the upper reservoir is based on the entire record developed by Commission staff, AmerenUE, the independent consultants, and the various entities which have been consulted or have provided comments to the Commission.

Sincerely,

J. Mark Robinson
Director
Office of Energy Projects

Enclosure

Enclosure

Environmental Requirements for the
Taum Sauk Upper Reservoir Reconstruction

Water Quantity and Quality

To minimize effects on reservoir elevations and downstream flow releases
under all conditions, AmerenUE (licensee for the Taum Sauk Project) must file a
Final Water Management Plan, for Commission approval, within one month of
issuance of the final Environmental Assessment (EA). The Final Water
Management Plan must address both the construction period and the initial upper
reservoir refilling period when water would be drawn from the lower reservoir
using the pump/generators. The final plan must identify: (1) all water withdrawals
and returns from the lower reservoir and their calculated rates, and expected
periods of use; (2) all methods that would be used to release water from the lower
reservoir to the East Fork Black River; (3) measures to be taken to ensure that
reservoir releases approximate total natural inflows, particularly during low flow
periods; (4) water level and release monitoring methods and frequencies to be used
during construction and refilling; and (5) the lowest reservoir level at which any
type of withdrawals would be allowed to continue. The Final Water Management
Plan must also address any seasonal concerns regarding maintenance of water
levels and flow releases, such as spawning of recovering fish populations, as
necessary.

The Final Water Management Plan must be developed in consultation with
the Missouri Department of Conservation (MDOC) and the Missouri Department
of Natural Resources (MDNR), and should fully discuss and consider the plan
developed by the agencies. The licensee's Final Water Management Plan must
include copies of comments from the agencies on a complete draft of the final plan
and the licensee's responses to the issues raised by the agencies. Finally, the plan
must include a schedule for the reporting of lower reservoir level and flow release
information at a frequency determined by the licensee, MDOC, and the MDNR, to
the Commission and the MDOC and MDNR. The reports must include
explanations of any notable fluctuations shown in the data. Any significant
fluctuations must be reported to the Commission within 3 days of occurrence. The
final plan must describe conditions that would constitute significant fluctuations
that would trigger such reporting.

The Commission retains the right to modify or reject the Final Water
Management Plan if it is deficient, does not appear to adequately address or

Unofficial FERC-Generated PDF of 20070815-0100 Issued by FERC OSEC 08/15/2007 in Docket#: P-2277-000

- 2 -

resolve issues that are raised during consultation with the resource agencies, or would not allow, upon staff review, adequate protection of natural resources. The filing of a deficient or inadequate Final Water Management Plan could result in rejection of the plan and the delay of the start of construction.

Reforestation / Revegetation

In order to mitigate for the loss of forest and forested habitat in a timely manner, the licensee must develop a reforestation plan in consultation with MDOC, MDNR, U.S. Fish and Wildlife Service (FWS) and the U.S. Forest Service (FS). The plan must be filed with the Commission for approval within one year of issuance of the final EA. The licensee must consult with the resource agencies to determine the proper species, size, age and ratio of species to reseed or plant that are suitable for Proffit Mountain. The plan must evaluate the best use of grasses, bushy vegetation, and multiple species of trees, ideally replanting those species that were cleared, or those species present in the immediate vicinity of the cleared area. The revegetation/reforestation plan must address the following areas: laydown areas 1, 2 and 3, the truck and equipment staging area, the test pad area, areas around the perimeter of the dike, the parking area and the road to the boring location as well as any other area affected by reconstruction. The reforestation plan must also include a monitoring component to assure that the plantings are surviving and whether or not additional plants are needed over time.

The reforestation plan must address the methods for preparing the area post-construction, to assure proper soil conditions are present before seeding and planting, which may include removal or partial removal of hardfill material. The hardfill material present at the staging areas may impede vegetation efforts by inhibiting root stabilization and water permeation. The resource agencies must be consulted to determine the extent to which the hardfill materials need to be removed and the amount of soil replenishment needed. The plan must include any comments from the resource agencies and incorporate the recommendations of the agencies or provide a detailed explanation, based on project specific information, for exclusion of the recommendation.

Wetlands

Following consultation with the MDNR on springs and wetlands in the project area, the licensee must file with the Commission, within six months of issuance of the final EA, the results of its consultation with the MDNR regarding how it proposes to resolve the concerns of the MDNR surrounding the wetlands created by leakage from the previous upper reservoir. Resolution may include, but is not limited to, determining the extent of mitigation needed, maintaining the existing wetlands or creating/replacing the wetlands.

Unofficial FERC-Generated PDF of 20070815-0100 Issued by FERC OSEC 08/15/2007 in Docket#: P-2277-000

- 3 -

The FS has expressed an interest in consulting with the licensee to help mitigate the loss of wetland habitat as a result of the proposed action. If consultation between the licensee and the MDNR concludes that mitigation is needed for the loss of wetlands, we encourage the licensee to also consult with the FS for information on potential mitigation enhancements.

Recreation

In order to safely maximize public usage of recreational amenities at the lower reservoir during the construction period, the licensee must file for Commission approval, within 15 days of issuance of the final EA, a plan, developed in consultation with the MDOC and MDNR, that details the specific recreational amenities that will be available to the general public throughout the construction period. Different facilities may be opened or closed at different times of the year. The plan must address updating signage to inform recreational users of any restrictions, including cautionary traffic signage, if necessary. Further, the licensee's recreation plan must allow for any seasonal and annual changes in construction activities that could affect recreation availability and safety. The plan must include any comments from the resource agencies and incorporate the recommendations of the agencies or provide a detailed explanation, based on project specific information, for exclusion of the recommendation.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

AmerenUE                                        Project No. 2277

## NOTICE OF AVAILABILITY OF FINAL ENVIRONMENTAL ASSESSMENT

(August 14, 2007)

In accordance with the National Environmental Policy Act of 1969 and the Federal
Energy Regulatory Commission (Commission or FERC) regulations contained in the
Code of Federal Regulations (CFR) (18 CFR Part 380), the Office of Energy Projects has
prepared a Final Environmental Assessment (FEA) regarding AmerenUE's request to
rebuild the upper reservoir of the Taum Sauk Pumped Storage Project (FERC No. 2277),
located on the East Fork Black River, in Reynolds County, Missouri. The FEA analyzes
the environmental effects of the reconstruction of the upper reservoir and contains
measures to minimize those effects. The FEA concludes that the proposed
reconstruction, with recommended mitigation measures, would not constitute a major
federal action significantly affecting the quality of the human environment.

A copy of the FEA is available for review at the Commission in the Public
Reference Room, or it may be viewed on the Commission's website at
http://www.ferc.gov using the e-Library link. Enter the docket number "P-2277" in the
docket number field to access the document. For assistance, call (202) 502-8222 or (202)
502-8659 (for TTY).

For further information regarding this notice, please contact Thomas LoVullo at
(202) 502-8900.

Kimberly D. Bose
Secretary

20070814-3028 Issued by FERC OSEC 08/14/2007 in Docket#: P-2277-000

This page intentionally left blank.

# FINAL ENVIRONMENTAL ASSESSMENT

## REBUILDING THE TAUM SAUK PUMPED STORAGE PROJECT'S UPPER RESERVOIR

**Taum Sauk Pumped Storage Project**
**FERC No. 2277**
**Missouri**



**Federal Energy Regulatory Commission**
**Office of Energy Projects**
**Division of Hydropower Administration and Compliance**
**888 First Street, NE**
**Washington, DC 20426**

**August 2007**

Some of the employees might need to temporarily relocate to the project area from elsewhere during the construction period. Employees would also be hired from the existing local area work force. Expecting few construction personnel to relocate to the project area, staff concludes that there would be no substantial in-migration of people, no excessive demand for rental housing, little or no increased demand for permanent housing, and little or no increased demand for government facilities or services associated with the construction work force.

The proposed rebuilding of the upper reservoir would contribute directly to the economy by providing employment and earnings, which also contribute indirectly to the economy through employee purchase of goods and services. The project-related construction employment and payroll would have a positive short-term effect on the local economy.

Rebuilding of the upper reservoir and allowing continued project operations at the Taum Sauk Project would provide a positive long-term effect on the local economy. As noted in the letters from the Lesterville R-IV School District community filed with the Commission on March 14, 2007, the project provides a large source of tax revenue and funding for the school district. Various commentors state that Ameren pays 53 percent of the local taxes, which support staff salaries and school programs. Additionally, Ameren states in its January 2007 Environment Report that it is a strong community partner, donating millions of dollars each year through the Ameren Corporation Charitable Trust to programs in education, services for youth and elderly, and the environment in its Missouri and Illinois service areas.

### Effects of No Action Alternative

Under the no action alternative, the upper reservoir would not be rebuilt, but instead would be made stable and safe from any future collapse. Although construction activities would still need to take place for the stabilization work, the work force would be much smaller than that needed to rebuild the reservoir. The positive short-term effect on the local economy would be minimal. Not rebuilding the upper reservoir would have a negative long-term effect on the economy due to the loss of tax revenue garnered from the project. The reduction in the available regional power supply that would occur as a result of the loss of project generation could also have a negative effect on the local economy.

## 6.0    FINDING OF NO SIGNIFICANT IMPACT

The rebuilding of the upper reservoir is necessary for the Taum Sauk Pumped Storage Project to resume operation. The proposed construction activities would occur in the same location as the previous upper reservoir, retaining a

similar shape and volume of water. No operational changes are proposed. Operation of the project provides needed energy storage for periods when demand is high or when energy is needed in emergency circumstances. The licensee's and staffs' recommended mitigation measures should reduce to the extent possible, impacts associated with the construction activities.

On the basis of our independent analysis, the proposed rebuilding of the upper reservoir of the Taum Sauk Project, with the licensee's and staff's recommended mitigation measures, would not constitute a major federal action significantly affecting the quality of the human environment.

## 7.0   LITERATURE USED OR CITED

Ameren. 2007a. Environmental Report: Taum Sauk Plant Upper Reservoir Dam, FERC No. 2277. Prepared by Paul C. Rizzo Associates, Inc., Monroeville, PA. Dated January 31, 2007, filed with the Federal Energy Regulatory Commission on February 5, 2007.

_____. 2007b. Report: Response to Commission Comments and Response to Stakeholder Comments on Environmental Report. Taum Sauk Plant Upper Reservoir Dam, FERC Project No. 2277. Prepared by Paul C. Rizzo Associates, Inc., Monroeville, PA. Dated April 30, 2007, filed with the Federal Energy Regulatory Commission on May 2, 2007.

_____. 2006a. Report to the Federal Energy Regulatory Commission containing Ameren's Taum Sauk Lower Reservoir Restoration Plan, dated April 18, 2006, filed with the Federal Energy Regulatory Commission on April 19, 2006.

_____. 2006b. Report to the Federal Energy Regulatory Commission containing a copy of a Memorandum of Understanding regarding the Taum Sauk Lower Reservoir Restoration Plan, dated June 29, 2006, filed with the Federal Energy Regulatory Commission on June 30, 2006.

_____. 2006c. Draft Environmental Report: Taum Sauk Plant Upper Reservoir Dam, FERC No. 2277. Prepared by Paul C. Rizzo Associates, Inc. Monroeville, PA. Dated August 2006. Unfiled report.

_____. 2004. Initial consultation document for relicensing the Taum Sauk Project, FERC No. 2277, dated December 17, 2004, filed with the Federal Energy Regulatory Commission on December 21, 2004.

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| MISSOURI COALITION FOR<br>THE ENVIRONMENT,<br><br>Petitioner,<br><br>v.<br><br>FEDERAL ENERGY REGULATORY<br>COMMISSION,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>) No.<br>)<br>)<br>)<br>)<br>) |

## LIST OF PARTIES SERVED

A copy of the petition for review has been served upon the following parties

admitted to participate in the agency proceedings:

Union Electric Company, d/b/a AmerenUE
C/o Kenneth L. Schmidt, Registered Agent
500 East Independence Drive
Union, MO 63084,

American Rivers
1101 14th St., Suite 1400
Washington, DC 20005, and

Sierra Club
7164 Manchester Ave.
St. Louis, MO 63143.

Bruce A. Morrison
Great Rivers Environmental Law Center
705 Olive Street, Suite 614
St. Louis, MO 63101-2208
Phone: (314) 231-4181
Fax: (314) 231-4184

Attorney for petitioners